Yasuo SASAKI, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 4, 1973.

William H. Allison, Jr., Louisville, Robert Allen Sedler, Lexington, Ellen Mosen, Member of Pennsylvania Bar, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., M. Curran Clem, Asst. Atty. Gen., Frankfort, Frank Benton, III, Commonwealth Atty., Newport, for appellee.

Robert C. Cetrulo, Covington, Robert F. Greene, Burlington, for amicus curiae of Northern Kentucky Right to Life Committee.

CULLEN, Commissioner.

In the decision of this court in this case reported in 485 S.W.2d 897, the Kentucky

abortion statute, KRS 436.020, · was held constitutional and the conviction of Dr. Yasuo Sasaki for violating that statute was affirmed. Dr. Sasaki appealed that decision to the United States Supreme Court. Pending that appeal, the Supreme Court decided Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147. Thereupon, the Supreme Court, 410 U.S. 951, 93 S.Ct. 1422, 35 L.Ed.2d 684, vacated our decision in the instant case and remanded the case to this court with directions for further consideration in light of Roe v. Wade.

This court has made the directed consideration and is compelled to hold that since the Kentucky abortion statute is basically indistinguishable from the Texas statute held unconstitutional in Roe v. Wade, our statute also is unconstitutional. We so hold, which means that the conviction of Dr. Saski cannot stand.

The judgment is reversed with directions to dismiss the indictment.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.

OSBORNE, Justice (concurring).

I concur in the actions of the court in this matter simply because I feel I have no alternative. By doing so I do not want it to be interpreted that I agree to any part of the United States Supreme Court's decision in Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147. I believe that court, in this instance and in many others, has and is usurping the rights of the several states in this Union to determine for themselves what constitutes a crime and to enforce their own criminal laws. This interference has now reached the point of the ridiculous. The citizens of the several states are forced, more and more, to look to the seat of our National Government for guidance, regulation and control and when they look they are perceiving more

and more of nothing but confusion and incompetence.

The federalist government which our ancestors established in this land has, at this time and point, been obliterated. This has been accomplished by all three branches of our Federal Government with no reason or purpose but to seize for themselves power. Now that they have seized the power it daily becomes apparent that they totally lack the qualifications to properly exercise it.

If the court's decision in Roe v. Wade is a barometer of what is about to befall we should all turn our heads to heaven for mercy for there is nothing left.

REED, Justice (concurring).

I agree with the court that the majority opinion of the Supreme Court of the United States in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, compels us to obey the Supreme Court's mandate and refuse to give effect to KRS 436.020 as that statute is presently written.

When all of the sensitive emotional elements concerned in the issue are as completely divorced from judicial consideration as is humanly possible, I must record my disagreement with the views expressed in the majority opinion of the Supreme Court while according to that court full respect and sympathy in view of the magnitude of the problem with which it dealt.

Nevertheless, it is my conscientious conclusion that the majority opinion in the Roe case rests upon a basis that does not justify the exercise of judicial power to accomplish a social result. The majority opinion seems to me to say that the medical profession is uncertain concerning the commencement of human life. The opinion, nevertheless, undertakes to judicially draw a statute by the terms of which no standards are permitted during the first trimester of pregnancy, the state's right to legislate on the subject is extremely restricted during the second trimester of

pregnancy, and the state's right to legislate is confined, for all practical purposes, to the last trimester of pregnancy. I do not understand that the result reached is inherent in any legal principle that the judiciary may properly rely upon.

Although it is much cheaper and easier to ask a court to order the social change wanted rather than to go through the time-consuming, expensive and inconvenient process of persuading voters or legislators, the fact remains that the proper forum to accomplish a change such as is involved here is a policy process to be consigned to the legislature. It is actually a part of the political process and there should be a very limited role for the judiciary in this respect. In my view the courts should refer an issue such as this to the political process even though groups would be angered who have been taught to hope for a more authoritarian solution.

When the judicial arm of government acts on no existing legal principle, and surely no such principle can be developed as long as the medical profession itself is as uncertain as the majority opinion represents it to be, and the judiciary, because of personal views as to desirable social policy, appears to be the ally of certain causes regardless of law, the moral authority of law is damaged in the eyes of the general population.

If, as many authorities believe, we are today in the middle of a constitutional crisis, particularly in the area of the doctrine of the separation of powers, I cannot in good conscience take any course other than to maintain that the judiciary is the last hope of securing a reasonable and workable assignment of the functions of government between the separate branches.

The doctrine of the separation of powers is no outmoded principle of 18th-Century philosophy to me. In my view, it is an imperative, though to be applied with learned reason, if our constitutional guarantees of individual freedom based on the intrinsic worth of the human personality are to exist in viable form. That means that the judicial arm of government must confine itself to its role and prevent impermissible invasions by the other branches upon each other or upon it. That, of course, results in disappointments and dissatisfaction by affected groups in individual instances. In the long run, however, it has proved to be a far superior course insofar as the happiness and freedom of the individual are concerned than the more authoritarian methods employed in other places in the world and advocated by some for adoption in this country.

PALMORE, C. J., concurs in the views expressed in this opinion.