**Fred RAINES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 1, 1987.

Discretionary Review Denied by Supreme Court June 23, 1987.

Eugene Goss, Sherry Brashear, Goss, Brashear & Goss, Harlan, for appellant.

David L. Armstrong, Atty. Gen., Joseph R. Johnson, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWERTON, C.J., and COMBS and HAYES, JJ.

HAYES, Judge:

The appellant was fined $100.00 by a jury for violating KRS 237.040, the criminal possession of a booby trap device with the intent to use that device to commit an offense against the laws of this State. On appeal he argues the constitutionality of the statute; sufficiency of the evidence; jury instructions, and the propriety of the Commonwealth Attorney's closing argument. Finding no reversible error in this record, we affirm.

The facts are simple. The only witness for the Commonwealth, a State Trooper, testified he observed the appellant standing beside a road leading to a coal mine, where a labor dispute had been in progress for over one year. Appellant had in his hand a fishing line. On the other end of this line and across the road from where appellant stood was a metal plate with spikes welded to it. The trooper stated that the strikers were pulling devices such as this into the path of coal trucks in an effort to puncture the truck tires. There was evidence these metal spikes had no other useful purpose. He also stated the trucks were not due down this road for about one hour after he saw and arrested appellant on the spot. Appellant's evidence was a general denial.

KRS 237.040 states:

A person is guilty of criminal possession of a destructive device or a booby trap device when he possesses, manufacturers, or transports such substance of device with:

(1) Intent to use that device to commit an offense against the laws of this state, a political subdivision thereof, or of the United States; ...

(3) Mere possession without substantial evidence of the requisite intent is insufficient to bring action under KRS 237.030 to 237.050.

KRS 237.030(2) defines a "booby trap" as:

[A]ny device, or substance designed to surreptitiously or covertly take life, endanger life or destroy or damage property and shall not include firearms.

Citing the void-for-vagueness doctrine, appellant claims the above statute is unconstitutional. The void-for-vagueness doctrine is generally stated to apply to a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Such a statute violates due process guaranteed by the Kentucky and United States constitutions. Vague statutes are also prohibited on the basis that they fail to provide explicit standards for those who enforce them, thus permitting discriminatory and arbitrary enforcement. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Thus the void-for-vagueness doctrine focuses on fair warning and nondiscriminatory enforcement as rationales for invalidating vague laws.[1]

Previously, in 1913, Mr. Justice Holmes in *Nash v. United States*, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913) said, "... the criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct." 229 U.S. at 377, 33 S.Ct. at 781.

The criminal possession of a booby trap is not a part of the penal code of Kentucky, Chapter 500 of the Kentucky Revised Statutes. The booby trap prohibition is contained in Chapter 237 of the Kentucky Revised Statutes entitled "Firearms and De-

---

1. Both rationals are not without some element of fiction. What potential criminal learns what is forbidden by reading a statute even if available? Also, the determination of whether a statute is vague often is not based upon the text of the law but upon how a court has construed that text, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). There-fore the potential criminal would have to resort to research to determine what is forbidden. And, insofar as nondiscriminate enforcement, it is submitted *any* statute is subject to such difficulty by the police, prosecutor and even the judge through his sentencing powers. It is especially true in any state, such as Kentucky, which has the age-old jury sentencing system.

struction Devices". A firearm is expressly excluded as a booby trap by definition. KRS 237.030(2). This chapter originally pertained to the right of Kentucky citizens to purchase and own firearms. In 1972 the prohibition on booby traps was added.[2]

■ Appellant complains of the use of the words "surreptitiously" and "covertly" in the definition of "booby trap." Although these words may not be common every day household words, we do believe an average, reasonable man understands those terms, especially when associated with the term "booby trap," which is defined by the Random House Dictionary of the English Language, unabridged edition, as "any hidden trap set for an unsuspecting person." The word "covert" being synonymous with surreptitious, means something hidden, concealed or done in secret or by stealth. It is difficult to imagine how the Kentucky Legislature could have been more definitive. As stated by the United States Supreme Court in *United States v. Petrillo*, 332 U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947):

> That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is not sufficient reason to hold language too ambiguous to define a criminal offense ... The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to be punished; but the Constitution does not require impossible standards.

The rationales upon which the void-for-vagueness doctrine rests, lack of fair warning and discriminate enforcement, are not present with regards to this statute.

■ There was sufficient evidence for a reasonably intelligent person to fairly find appellant guilty beyond a reasonable doubt. No motion for a directed verdict was made at the close of the Commonwealth's case. Therefore evidence submitted by the appellant may be considered when determining whether there was sufficient proof for a jury to find guilt beyond a reasonable doubt. The jury could clearly conclude that the trap, which one would not find at the local hardware store, had only one real purpose; the appellant was caught with the trap in hand, with intent to use it for an unlawful purpose—to destroy property.

The appellant next contends the jury was not properly instructed because no definition of the words "possession," "covertly," or "surreptitiously" was given. We have already determined that "covertly" and "surreptitiously" were words of ordinary meaning and understanding sufficient to put the average citizen on notice as to the nature of the conduct proscribed. The same may be said for the word "possession." In such case, the terms need not be defined in instructions to the jury.

Lastly, the appellant claims reversible error because of the Commonwealth Attorney's statement in closing argument that, according to appellant, negated the element of intent. The statement was, "While they were there that morning, without any really danger of him having to pull this in front of a truck, he was showing out for his buddies a little bit. I'm with you. I can't be here on the line all day. But, you know, I am with you. Here, I'll show you, I'll drag one of these things around on a string."

First, what an attorney says during a trial is not evidence, unless under oath as any other witness; and secondly, what was said here was favorable to the appellant and there is no legal basis for him to complain, even assuming error by the Commonwealth's Attorney.

The judgment is affirmed.

HOWERTON, C.J., concurs.

COMBS, J., dissents with separate opinion.

COMBS, Judge, dissenting.

I respectfully dissent from the majority opinion. I would reverse the conviction

---

**2.** It may be mere coincidence but it is noted that the individual Kentucky Legislator who was the prime sponsor of House Bill 83, which became KRS 237.040, was from Inez, Kentucky in the heart of Kentucky coal country.

and remand the case for a new trial, for the following reasons.

First. When the Legislature has defined a term by statute and that term is an essential element of a crime charged, it is the duty of the court, when requested by a defendant to instruct the jury on the statutory definition of the term. Here, the trial court erred in failing to instruct the jury as to the meaning of the term "possession" as defined in KRS 500.080(14). The alleged "booby trap" was a spiked metal plate and not the fishing line being held by appellant. Had the jury been given the statutory definition of the word "possession" it is very likely that the jury would have returned a different verdict.

Second. Subsection 3 of KRS 237.040, the statute under which appellant was indicted, is as follows:

Mere possession without substantial evidence of the requisite intent is insufficient to bring action under KRS 237.030 —237.050.

Intent is an essential and critical element of the offense denounced by KRS 237.-040(1). The lack of substantial evidence of the requisite intent can best be demonstrated by some of the concluding remarks of the Commonwealth Attorney during summation:

And maybe because he wasn't out there actually walking the picket line with them, he had his little device with him to show these fellas he was really with them, you know. But now, its obvious there were no trucks coming up and down through there an hour before their time. They tell you the trucks didn't come through until about eight o'clock. As one of the pickets told you, they waited til the school buses got through there because they didn't want anybody to get hurt. So the truckers waited til the school buses came through.

While they were there that morning, without any really danger of him having to pull this in front of a truck, he was showing out for his buddies a little bit. "I'm with you. I can't be here on the line with you all day. But, you know, I am with you. Here, I'll show you, I'll drag one of these things around on a string."

Third. I cannot agree with the majority when they say "surreptitiously" and "covertly" are terms that "an average, reasonable man understands," or "words of ordinary meaning and understanding sufficient to put the average citizen on notice as to the nature of the conduct proscribed."

In *United States v. Combs*, 390 F.2d 426; 3 A.L.R.Fed. 410 (1968), the appellant was charged with criminal contempt for bringing a tape recorder into the courtroom and "surreptitiously recording what the court was saying and what you were saying here." He was then charged with "willfully, surreptitiously, contemptuously without the order of the court bringing into the courtroom a recording device." The tape recorder in question was on counsel table and the microphone was beside the court microphone. In reversing the conviction, the court observed:

As a matter of fact the United States does not contend that the apparent activity of Mr. Combs was carried on in a furtive manner; it contends that such nonpermissive activity was so unpretentious that it would have gone completely unnoticed except for the exaggerated delay in disassembling the recorder at the conclusion of the hearing.

If a United States District Judge and a United States Attorney cannot agree on the meaning of "surreptitious" how can this court say it is a word of ordinary meaning and understanding sufficient to put the average citizen on notice?