LEXINGTON FAYETTE COUNTY FOOD AND BEVERAGE ASSOCIATION, Appellant,

v.

LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT; Lexington–Fayette Urban County Council and Its Members: Paul Brooks; Fred Brown; George Brown, Jr.; Bill Cegelka; Dick DeCamp, Jr.; Chuck Ellinger II; Bill Farmer, Jr.; Linda Gorton; Gloria Martin; Al Mitchell; Jennifer Mossotti; Sandy Shafer; David B. Stevens M.D.; Jacques Wigginton, Jr.; Mike Scanlon, Vice Mayor of Lexington–Fayette Urban County Government and as member of the Lexington–Fayette Urban County Council; Teresa Ann Isaac, in her official capacity as Mayor of Lexington, Kentucky; Lexington–Fayette Urban County Board of Health & Charles Gorton, as Acting Commissioner of Fayette County Board of Health; Lexington–Fayette Urban County Health Department, Appellees.

and

Lexington Fayette County Food and Beverage Association, Movant,

v.

Lexington–Fayette Urban County Health Department; Lexington–Fayette Urban County Board of Health; Lexington–Fayette Urban County Government; Lexington–Fayette Urban County Council and Its Members:

Paul Brooks; Fred Brown; George Brown, Jr.; Bill Cegelka; Dick De-Camp, Jr.; Chuck Ellinger II; Bill Farmer, Jr.; Linda Gorton; Gloria Martin; Al Mitchell; Jennifer Mossotti; Sandy Shafer; David B. Stevens M.D.; Jacques Wigginton, Jr.; Mike Scanlon, Vice Mayor of Lexington–Fayette Urban County Government and as member of the Lexington–Fayette Urban County Council; Teresa Ann Isaac, in her official capacity as Mayor of Lexington, Kentucky; Lexington–Fayette Urban County Board of Health & Charles Gorton, as Acting Commissioner of Fayette County Board of Health; Charles Gorton, as Acting Commissioner of the Lexington–Fayette Urban County Board of Health, Respondents.

No. 2003–SC–0978–TG, 2003–SC–0990–I.

Supreme Court of Kentucky.

April 22, 2004.

John W. Walters, Michael T. Davis, Golden & Walters, PLLC, Lexington, Counsel for Appellant.

Theresa L. Holmes, Leslye M. Bowman, Lexington–Fayette Urban, Margaret A. Miller, Phillip D. Scott, David Austin French, Brian Michael Johnson, Greenbaum Doll & McDonald PLLC, Lexington, Counsel for Appellees.

Joe C. Savage, Savage, Elliott, Moore, Mullins & Erdmann, LLP, Lexington, Counsel for Amicus Curiae: American Medical Association; Kentucky Medical Association; Americans for Nonsmokers' Rights; National Center for Tobacco–Free Kids; Tobacco Control Legal Consortium.

Peter Everett Brown, Lexington, Counsel for Amicus Curiae: Lexington Health United.

William A. Thielen, James Donald Chaney, Lexington, Counsel for Amicus Curiae: Kentucky League of Cities.

Opinion and Order of the Court by Justice WINTERSHEIMER.

This appeal is from an opinion and order of the Fayette Circuit Court which sustained a motion by the Lexington–Fayette Urban County Government for a summary judgment and denied a motion for summary judgment from the Lexington Fayette County Food and Beverage Association. The effect was to have the complaint of the Food and Beverage Association dismissed and the temporary injunction dissolved. The Court of Appeals denied the motion of the Food and Beverage Association for emergency injunctive relief. Ultimately, this Court accepted transfer of the appeal.

The principal issue is whether the authority of local government to regulate smoking in business places of public accommodation is preempted by state law. Stated differently, the question is whether a local government has the authority to enact an ordinance which prohibits smoking in public buildings for the purpose of protecting the public from the effects of second-hand smoke inhalation. In order to decide this matter, we must consider whether an ordinance of this nature is a proper exercise of police powers and whether or not a local government is preempted by state law from enforcing such an ordinance. The resolution of this matter turns on an issue of law.

The significant arguments of the Food and Beverage Association are that the ordinance is preempted by various state statutes and regulations; that the ordinance violates the right to conduct a private business; and that parts of the ordinance are vague, and thus the entire ordinance is

invalid. Also raised in this appeal is the question of whether it was error for the circuit judge to deny a motion by the association for default judgment.

This case is not about whether the decision of a local government to enact smoking restrictions is a sound policy matter. Such policy questions are completely within the province of the local legislative body and we do not find it necessary to review that decision in this matter. Any dissatisfaction can be raised at the ballot box.

The history of this case indicates that the urban county government established a task force and a committee to review health studies and public attitudes. Both of these groups reported that there was evidence of adverse health effects resulting from the exposure to second-hand smoke. Public hearings and public debate was extensive. After exhaustive investigation, the urban county government enacted an ordinance to minimize, if not entirely eliminate, the exposure of the public to such a risk.

On July 1, 2003, the Lexington–Fayette Urban County Council adopted an ordinance which effectively bans smoking in any enclosed building open to the public with certain limited exceptions such as dwellings and government buildings. The ordinance eliminated smoking in all restaurants and bars in the county, including cigar bars, nightclubs and taverns.

### I. Preemption

The association argues that the smoking ban ordinance is preempted by superior state law. We disagree.

It has long been recognized that a municipal corporation, pursuant to its police power, has wide latitude to adopt ordinances which promote the health, safety, morals or general welfare of the people. *U.S. Mining & Exploration Natural Re-*sources Co., Inc. v. City of Beattyville, Ky., 548 S.W.2d 833 (1977). Among the police powers of government, the authority to promote and safeguard public health is a high priority. *Graybeal v. McNevin,* Ky., 439 S.W.2d 323 (1969). In *Graybeal, supra,* this Court upheld the fluoridation of the public water supply of the City of Somerset. Accordingly, a prohibition on smoking and the accompanying result of second-hand smoke, is well within the traditionally recognized authority of local government as a health matter.

In 1980, the General Assembly enacted various legislation known commonly as "home rule" which permitted cities to act without specific statutory authorization. *Cf. Historic Licking Riverside Civic Ass'n v. City of Covington,* Ky., 774 S.W.2d 436 (1989). KRS 82.082, which is applicable to the urban county government because of its status as a city pursuant to KRS 67A.060, provides that a city may exercise any power and perform any function within its boundaries that is in furtherance of a public purpose and not in conflict with constitutional or statutory law.

More directly, KRS 67A.070 regulates the legislative authority of urban county government. It provides in pertinent part:

(1) Urban-county governments may enact and enforce within their territorial limits such tax, licensing, police, sanitary and other ordinances not in conflict with the Constitution and general statutes of this state now or hereafter enacted, as they shall deem requisite for the health, education, safety, welfare and convenience of the inhabitants of the county and for the effective administration of urban-county government.

(2) Urban-county government ordinances shall be deemed to conflict with general statutes of this state only: (a) When the ordinance authorizes that which is expressly prohibited by a gen-

eral statute; or (b) When there is a comprehensive scheme of legislation on the same subject embodied in a general statute.

KRS 67A.070(2)(a) is a type of direct preemption in that an ordinance may be expressly prohibited by a general statute or when there is a comprehensive scheme of legislation.

The mere presence of the state in a particular area of the law or regulation will not automatically eliminate local authority to enact appropriate regulations. Local regulation is not always precluded simply because the legislature has taken some action in regard to the same subject. For an extensive discussion of this question, see *Firemen's Ins. Co. of Washington, D.C. v. Washington,* 483 F.2d 1323 (C.A.D.C.1973) and *Maryland and District of Columbia Rifle and Pistol Ass'n v. Washington,* 442 F.2d 123 (C.A.D.C.1971).

▮ The true test of the concurrent authority of the state and local government to regulate a particular area is the absence of conflict. The simple fact that the state has made certain regulations does not prohibit local government from establishing additional requirements so long as there is no conflict between them. *Cf. Commonwealth v. Do, Inc.,* Ky., 674 S.W.2d 519 (1984); *Adams, Inc. v. Louisville and Jefferson County Bd. of Health,* Ky., 439 S.W.2d 586 (1969), which held that there is perhaps no broader field of police power than that of public health. The constitutional limitation upon the exercise of police power to regulate health is a matter of reasonableness. Concurrent local regulation is valid unless it is unreasonable and oppressive and conflicts with state regulation. *City of Ashland v. Ashland Supply Co.,* 225 Ky. 123, 7 S.W.2d 833 (1928),

A careful examination of the record and ordinance in this case as compared to the statutes and regulations involved indicates that the local authority has not adopted an ordinance which conflicts with any statute or regulation in the individual fields sought to be controlled. *See Do, Inc., supra.* Protecting the public from exposure to environmental tobacco smoke, sometimes known as second-hand smoke, can be the proper object of the police power of local government. The exercise of police power for the purpose of protecting the public health has been termed "the law of overruling necessity." *See* 7 McQuillen *Municipal Corporations* § 24.221 (3d Ed.1986). This Court has held on several occasions that the protection of public health is uniformly recognized as a most important municipal function. "It is not only a right but a manifest duty of a city." *Nourse v. City of Russellville,* 257 Ky., 525, 78 S.W.2d 761, 764 (1935). *See also Shaeffler v. City of Park Hills,* Ky., 279 S.W.2d 21 (1955); *Graybeal.*

▮ In regard to any potential conflict between the ordinance and KRS 438.300 as well as subsequent statutory provisions found in KRS 438.305 to 438.340, we have determined that those statutes deal almost exclusively with prohibiting the sale, distribution and use of tobacco products to or by persons under the age of 18. We agree with the circuit judge that the legislature intended to preempt any local ordinances which would contravene the terms of the statutes in question insofar as any local ordinances might make it easier to acquire tobacco products. KRS 438.300 does not preempt the use of a local ordinance which serves to prohibit the use of tobacco products in public places by anyone.

▮ It is a primary rule of statutory construction that no single word or sentence determines the meaning of a statute. Rather, the statute as a whole must be considered. *See County of Harlan v. Appalachian Regional Healthcare, Inc.,* Ky.,

85 S.W.3d 607 (2002). Here, there is nothing in the statutes involving youth smoking which conflict with the ordinance.

The contention that KRS 217.005 to 217.215, known as the "Kentucky Food, Drug and Cosmetic Act," and 902 KAR 45:005, known as the "Retail Food Code" expressly preempt this ordinance is without merit. Although the regulation contains language that the function of the regulation is to establish a uniform code for the regulation of all food service establishments and retail food stores for the purpose of protecting public health, the clear purpose of that regulation is to govern the food preparation and delivery in the state. Smoking is only considered insofar as the use of tobacco might affect food preparation and delivery.

There are no state statutes or regulations that expressly relate to indoor smoking and there is no declaration that indoor smoking is within the purview of the retail food code. There is no provision of that code which requires a business to permit employees or customers to smoke. As noted earlier, KRS 438.300, and the following statutes are designed to prevent the sale and distribution of tobacco to persons under the age of 18. The statutes are silent in regard to the use of the tobacco products, but only proscribed sale and distribution. There is no conflict.

We must also reject the contention that preemption is implied even though not expressed. In a case involving medical products liability claims, this Court stated that, "Implied preemption occurs when the state law actually conflicts with federal law or where the federal law so thoroughly occupies the legislative field that it may be reasonably inferred that Congress left no room for the state to supplement it." *Niehoff v. Surgidev Corp.*, Ky., 950 S.W.2d 816, 820 (1997). Here, KRS 67A.070(2)

accurately reflects the general standard governing preemption.

Implied preemption is considered to be a comprehensive system of legislation on the same subject embodied in a general state statute. The association presents five separate statutory provisions which touch on smoking in support of its argument. They are: (1) KRS 217.005 to 217.215, called the "Kentucky Food, Drug and Cosmetic Act" and 902 KAR 45:005, called the "Retail Food Code"; (2) KRS 61.165, which governs smoking policy for all state and local government offices; (3) KRS 56.463, which authorizes the Finance and Administration Cabinet to adopt administrative regulations controlling state-owned and leased buildings and 200 KAR 6:045, which permits the designation of smoking and non-smoking areas in public facilities; (4) KRS 438.050, which provides for fines for anyone smoking on school premises except in designated smoking areas; and (5) KRS 196.245, which authorizes the Commissioner of the Department of Corrections to prohibit or permit smoking by inmates.

■ Again, we must agree with the circuit judge that the statutes presented are not a comprehensive system of legislation on smoking but are a collection of various statutes that mention smoking in a specific context. It cannot be said that the urban county ordinance conflicts with any comprehensive system of legislation on the same subject which is embodied in a general statute. From a municipal legislative point of view, the ordinance is not aimed solely at restaurants or bars. The provisions apply to "any building open to the public" with certain defined exceptions.

The authorities cited by the association, *Boyle v. Campbell*, Ky., 450 S.W.2d 265 (1970), and *Commonwealth v. Telcom Directories, Inc.*, Ky., 806 S.W.2d 638 (1991) are unpersuasive. *Boyle, supra,* held that the Sunday closing law was preempted

because it directly contradicted state law. *Telcom, supra,* held that the federal postal laws did not preempt the Kentucky Consumer Protection Act despite the existence of federal law that not only directly and expressly regulated the conduct at issue, but also provided different remedies for the prohibited conduct. Citation by the association to foreign legal authorities is equally unconvincing.

When the legislature seeks to expressly preempt entire fields of local regulation and ordinance, it does so by clear and unmistakable language. There is no clear expression of prohibition in regard to this case, and there is no implied expression of prohibition which arises to the level of a conflict between the ordinance and state law.

## II. Property Right

The association complains that the ordinance is invalid because it infringes on the right of business owners to conduct their business without impermissible interference from government. They claim that the ordinance dictates the character of their business under the guise of promoting public health and that certain businesses which attract large numbers of smokers may suffer economic harm and may be forced to close.

██ ██ There is a long history of Kentucky precedent that is contrary to the arguments presented by the association. The fact that an exercise of police power impinges upon private interest does not restrict reasonable regulation. *Adams, Inc., supra.* As noted earlier, among the police powers of the government, the power to promote and safeguard public health ranks at the top. *Graybeal.* If the right of an individual runs afoul of the exercise of this power, the right of the individual must yield. *Frederick v. Air Pollution Control Dist. of Jefferson County,* Ky., 783 S.W.2d 391 (1990); *See also Do, Inc.; Graybeal; City of Louisville v. Thompson,* Ky., 339 S.W.2d 869 (1960); *Sanitation District No. 1 of Jefferson County v. Campbell,* Ky., 249 S.W.2d 767 (1952); *Nourse, supra; Tolliver v. Blizzard,* 143 Ky. 773, 137 S.W. 509 (1911).

██ "There is perhaps no broader field of police power than that of public health." *Adams, Inc.,* at 589. "It is thus apparent that, insofar as public health is concerned, private property may become of public interest and the constitutional limitations upon the exercise of that power of regulation come down to a question of 'reasonability'." *Adams Inc.,* at 590. The real issue is whether the public health regulation is reasonable. *See U.S. Mining & Exploration Natural Resources Co., Inc., supra.* In this case, we must conclude that it is. Both federal and state courts have determined numerous times that where public interest is involved it is to be preferred over property interests even to the extent of destruction if necessary. *See Mansbach Scrap Iron Co. v. City of Ashland,* 235 Ky. 265, 30 S.W.2d 968 (1930), *citing Miller v. Schoene,* 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928).

In this situation the urban county government considered lengthy public hearings at which evidence of the problems connected with the use of tobacco products and second-hand smoke were extensively discussed by all sides to the controversy. Evidence was presented that used objective sales data to the effect that "no adverse economic effect" or "improved business" was found. The smoking ordinance is not an improper infringement upon property rights.

## III. Vagueness

### A. "Reasonable Distance"

The association contends that the ordinance is vague because it requires that

smokers must maintain a "reasonable distance from the outside entrance of any building" and thus requires enforcement to be based on a subjective determination of compliance. However, the mandate of "reasonable distance" is modified by the objective goal of keeping the interior of the building free from tobacco smoke. The ordinance requires that the smoke not enter the building through the entrances, windows, ventilation systems or other means.

 As long as an ordinance or statute can be reasonably understood by those affected by the ordinance and they can reasonably understand what the statute requires of them, it is not unconstitutionally vague. *See Gurnee v. Lexington–Fayette Urban County Government,* Ky. App., 6 S.W.3d 852 (1999). Vagueness involves a "man on the street" approach. The challenged statute must provide "fair warning" to the public and "explicit standards" for those who apply it in order to pass constitutional muster. *Hardin v. Commonwealth,* Ky., 573 S.W.2d 657 (1978). Surely, individuals can reasonably understand that if their tobacco smoke is entering the building they are not at a reasonable or required distance.

### B. Smoking Paraphernalia

The association also raises a void-for-vagueness challenge to the subsection of the ordinance that provides, "[a]ll ashtrays and other smoking paraphernalia shall be removed from any area where smoking is prohibited by Sections 14–97 to 14–104 and shall not be permitted by the owner, operator, manager, or other person having control of the establishment[.]" Lexington–Fayette Urban County Code of Ordinances § 14–99(3). We agree with the association that Section 14–99(3) is unconstitutionally vague because the Lexington–Fayette Urban County Council has failed to define or otherwise clarify the meaning of "smoking paraphernalia," and, consequently, entities that are subject to the ordinance will have to rely on conjecture, speculation, and guesswork when they attempt to bring themselves into compliance by removing "smoking paraphernalia" from their premises. In doing so, we observe that the association's brief appears to correctly construe the scope of Section 14–99(3), *i.e.,* "[e]ach and every affected business, whether it is a restaurant that sells cigarettes and matches from behind the bar, a liquor store that contains a small cigar and accessories shop, or Kroger and Wal–Mart, must remove any and all items qualifying as 'paraphernalia' from within its premises or be subject to prosecution by the Appellees." The urban county government's protestations that the Lexington–Fayette County Health Department has no intention of enforcing the statute in this manner are not relevant to the construction of the provision as enacted. The "plain meaning rule" tells us that the best indication of the council's intent is the language of Section 14–99(3) itself. *See, e.g., Griffin v. City of Bowling Green,* Ky., 458 S.W.2d 456, 457 (1970) ("Where the words used in a statute are clear and unambiguous and express the legislative intent, there is no room for construction and the statute must be accepted as it is written."). And, Section 14–99(3) expressly and unequivocally requires the removal of "ashtrays and other smoking paraphernalia" from any building that is not exempted under Section 14–98(1)(a)–(g). The council could easily rectify the discontinuity between what Section 14–99(3) *says* and how they intend to enforce it by appropriately defining "smoking paraphernalia" and amending Section 14–99(3) to require the removal of "smoking paraphernalia *intended for use on the premises* from any area where smoking is prohibited by Sections 14–97 to 14–104[.]"

"[A] proper analysis of a statute claimed to be facially unconstitutional for vagueness is whether a person disposed to obey the law could determine with reasonable certainty from the language used whether contemplated conduct would amount to a violation." *Commonwealth v. Foley*, Ky., 798 S.W.2d 947, 951 (1990), *overruled on other grounds · by Martin v. Commonwealth*, Ky., 96 S.W.3d 38 (2003). *See also Gurnee, supra* at 856 (1999) ("The fact that a statute ... is susceptible to more than one interpretation does not require a holding that the statute is unconstitutional if, as the circuit court determined, those who are affected by the statute can reasonably understand what the statute requires of them."); *Sasaki v. Commonwealth*, Ky., 485 S.W.2d 897, 901 (1972) ("The accepted test in determining the required precision of statutory language imposing criminal liability is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."). The "void for vagueness" doctrine, therefore, attempts to ensure fairness by requiring an enactment to provide: (1) "fair notice" to persons and entities subject to it regarding what conduct it prohibits; and (2) sufficient standards to those charged with enforcing it so as to avoid arbitrary and discriminatory application. *State Board for Elementary Education v. Howard*, Ky., 834 S.W.2d 657, 662 (1992) ("In reviewing the standard for vagueness, this Court and the United States Supreme Court have followed two general principles underlying the concept of vagueness. First, a statute is impermissibly vague if it does not place someone to whom it applies on actual notice as to what conduct is prohibited; and second, a statute is impermissibly vague if it is written in a manner that encourages arbitrary and discriminatory enforcement."); *Hardin, supra* at 660; *Commonwealth v. Kash*, Ky.App., 967 S.W.2d 37, 42 (1997) ("The void-for-vagueness doctrine emanates from the due process provisions of the United States and Kentucky Constitutions. To survive vagueness analysis a statute must provide 'fair notice' of prohibited conduct and contain 'reason-ably clear' [sic] guidelines to thwart 'arbitrary and discriminatory enforcement.'" (citations omitted)); *Raines v. Commonwealth*, Ky. App., 731 S.W.2d 3, 4 (1987). Section 14–99(3), as written, flunks the so-called "man on the street" test and provides insufficient guidance for both those entities seeking to comply with it and those directed to enforce it.

"Paraphernalia" is defined, generally, as "[t]he articles used in a particular activity; equipment," *American Heritage Dictionary of the English Language* (4th ed.2000), and "[a]ppendages; ornaments; finery; equipments[.]" *Webster's Revised Unabridged Dictionary* (1998). Thus, we can infer a "working definition" of "smoking paraphernalia" as "the articles or equipment used to smoke." The void-for-vagueness problem presented here is that the reasonable parameters of exactly what constitutes such equipment are unstated and potentially boundless. Although Section 14–99(3) identifies "ashtrays" as one type of "smoking paraphernalia," it offers no other guidance as to what else might constitute such paraphernalia. And "smoking paraphernalia" could reasonably be interpreted to include any or all of the following: cigarettes, cigars, pipes, rolling tobacco, pipe tobacco, rolling papers and cigarette tubes (with or without filters), rolling machines, pipe tampers, pipe cleaners, pipe brushes, pipe covers and screens, cigarette and cigar cases, cigarette holders, humidors, humidifiers and hygrometers, cigar cutters, matches, lighters, butane lighter fluid, flints, cigarette snuffers, air freshener, breath mints, and smoking

jackets. Although "the Constitution does not require impracticable or impossible standards of specificity[,]" *Sasaki, supra* at 901, or "idealistic perfection in preciseness," *Colten v. Com.,* 467 S.W.2d 374, 378 "criminal statutes must be sufficiently specific that an individual has fair notice of what conduct is forbidden." *Kash, supra* at 43. Section 14–99(3) falls short of such specificity.

On two (2) separate occasions, the United States Supreme Court has considered void-for-vagueness challenges to criminal enactments relating to *drug* paraphernalia. And, although the Court rejected the constitutional challenge in each case, the statutes at issue went far beyond Section 14–99(3) in their efforts to define the types of paraphernalia prohibited. In *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Court addressed a challenge to an ordinance that required businesses to obtain a license if they sold any items that are "designed or marketed for use with illegal cannabis or drugs" and was accompanied by "[a] series of licensing guidelines prepared by the Village Attorney [that] define[d] 'Paper,' 'Roach Clips,' 'Pipes,' and 'Paraphernalia,' the sale of which [was] required to be licensed." *Id.,* 455 U.S. at 492, 102 S.Ct. at 1190, 71 L.Ed.2d at 368. The Court found the ordinance to be "sufficiently clear," *Id.,* 455 U.S. at 500, 102 S.Ct. at 1194, 71 L.Ed.2d at 372, but remarked in a footnote that "[w]e agree with the Court of Appeals that a regulation of 'paraphernalia' alone would not provide much warning of the nature of the items regulated." *Id.,* 455 U.S. at 500 n. 17, 102 S.Ct. at 1194 n. 17, 71 L.Ed.2d at 373 n. 17. Later, in *Posters 'N' Things v. United States,* 511 U.S. 513, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994), the Court considered a similar challenge to the Mail Order Drug Paraphernalia Control Act, 21 U.S.C. § 857, which contained a lengthy

definition of "drug paraphernalia," *Id.,* 511 U.S. at 517 n. 6, 114 S.Ct. at 1750 n. 6, 128 L.Ed.2d at 547 n. 6; *Id.,* 511 U.S. at 519 n. 7, 114 S.Ct. at 1751 n. 7, 128 L.Ed.2d at 548 n. 7, which is similar to those found in Kentucky's Controlled Substances Act. *See* KRS 218A.500; KRS 218A.510. The Court agreed "that § 857(d) establishes objective standards for determining what constitutes drug paraphernalia," *Posters 'N' Things, supra* at 511 U.S. at 518, 114 S.Ct. at 1750, 128 L.Ed.2d at 547, and thus rejected the void-for-vagueness challenge:

Petitioners argue that § 857 is unconstitutionally vague as applied to them in this case. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Whatever its status as a general matter, we cannot say that § 857 is unconstitutionally vague as applied in this case.

First, the list of items in § 857(d) constituting *per se* drug paraphernalia provides individuals and law enforcement officers with relatively clear guidelines as to prohibited conduct. With respect to the listed items, there can be little doubt that the statute is sufficiently determinate to meet constitutional requirements. Many items involved in this case—including bongs, roach clips, and pipes designed for use with illegal drugs—are among the items specifically listed in § 857(d).

Second, § 857(e) sets forth objective criteria for assessing whether items constitute drug paraphernalia. These factors minimize the possibility of arbitrary enforcement and assist in defining the sphere of prohibited conduct under the statute. Section 857(f)'s exemption for

tobacco-related products further limits the scope of the statute and precludes its enforcement against legitimate sellers of lawful products.

Finally, the scienter requirement that we have inferred in § 857 assists in avoiding any vagueness problem....

*Id.* at 511 U.S. at 525–26, 114 S.Ct. at 1754–55, 128 L.Ed.2d at 551–52.

■■■ Unlike the enactments at issue in *Hoffman Estates* and *Posters 'N' Things,* Section 14–99(3) gives no guidance beyond the words "smoking paraphernalia." Although it is likely a fair assumption that the ordinance is intended to require the covered entities to remove direct "smoking paraphernalia" such as cigarettes and cigars, but not breath mints and air freshener, "[l]ying between those extremes ... is a vast middle ground which is subject to characterization as lawful or unlawful in the discretion," *Foley, supra* at 950, of the enforcing authorities. Because the entities subject to the ordinance have no means to reasonably predict the scope of "smoking paraphernalia" that they must remove, Section 14–99(3) is void-for-vagueness. The invalidity of Section 14–99(3), however, does not render the entire ordinance invalid because the code contains a severability provision, § 1–5, and it is clear that the remainder of the smoking ban ordinance is "not so essentially and inseparably connected with and dependant upon [Section 14–99(3) ] that the [council] would not have enacted the valid provisions without the invalid provisions." *Martin, supra* at 58. Accordingly, we grant partial CR 65.09 relief, reverse the trial court's summary judgment for the urban county government in part, and remand the case for entry of judgment declaring Section 14–99(3) unconstitutional and enjoining its enforcement.

## IV. Default Judgment

The association argues that the circuit judge erred in denying the motion by the association for default judgment. It claims that it is entitled to default judgment because the urban county government failed to file a responsive pleading of any kind. It contends that the association's amended complaint authorized by the circuit judge is of no consequence because the urban county government was in default at the expiration of ten days after the filing of the amended complaint.

In this circumstance, it would have been an abuse of discretion if the circuit judge had granted the motion for default judgment. The urban county government was not in default because it had briefed the issues on the merits in compliance with the applicable court orders. The argument that every complaint requires an answer even if a motion to dismiss is filed and granted does not consider the effect of CR 12.01 and applicable case law. The service of a motion permitted under Rule 12 alters the periods of time unless a different time is fixed by order of the court. Consequently, the filing of a CR 12.02 motion tolls the running of time in which to file an answer. *Carnahan v. Yocom,* Ky., 526 S.W.2d 301 (1975). The treatment of a motion to dismiss as a summary judgment motion does not alter the tolling provisions of the civil rule. *Cf. F.D.I.C. v. Heidrick,* 812 F.Supp. 586 (D.Md.1992). The tolling period never began to run because the motion to dismiss was granted. Whether the motion by the urban county government was considered as a motion to dismiss or a motion for summary judgment, CR 55.01 provides that a party may apply for default judgment when the opposing party fails to plead or "otherwise defend" as provided by the rules. The urban county government did defend and, therefore,

an entry of default judgment would have been inappropriate pursuant to CR 55.01.

For the above reasons, as to Section 14–99(3), we grant partial CR 65.09 relief, reverse the trial court's summary judgment for urban county government in part, and remand the case for entry of judgment declaring Section 14–99(3) unconstitutional and enjoining its enforcement. As to the remainder of the ordinance, we deny CR 65.09 relief and affirm the trial court's summary judgment for the urban county government. Accordingly, the ordinance banning smoking in public places is permitted to go into effect.

All concur, except GRAVES, J., who dissents by separate opinion.

Dissenting opinion by Justice GRAVES.

I would strike down the ordinance as being arbitrary and oppressive and therefore in violation of Section 2 of the Bill of Rights of the Kentucky Constitution[1]. The ordinance is arbitrary because there are less intrusive means to achieve the intended result of making sure that the health of non-smokers is protected. The ordinance is oppressive because it operates as a regulatory partial taking of private property without just compensation.

Private property does not belong to the public. Employing a large staff, or providing services to many people, is not sufficient to transform private property into public property. The litmus test for private property is ownership, not the size of the customer base or the work force.

Since tobacco is a legal product and smoking a legal activity, the private business owner should have the choice to either prohibit smoking in his or her establishment, or be permitted and required to warn patrons that smoking is allowed and that second-hand smoke presents a health hazard. Thus, both the business owner and the customer have freedom of choice, and the ends of the ordinance are achieved in a reasonable manner. Customers are warned of the risk of second-hand smoke up front, and can easily avoid the risk by leaving the premises.

Each business is unique. Each deals with a different clientele. Who but the owner is best able to determine the effect of a smoking ban on profits? If he is wrong, he will soon adjust, or go out of business. The American economic system works best when individuals are able to put resources to their most highly valued use. The right to own private property is the foundation of a free market economy.

Use is an essential attribute of ownership. The private property owner operates a restaurant to make a profit, not because his fellow man needs to be fed. The owner chooses to either prohibit or permit smoking depending upon which choice will be the most efficient use of the investment of his capital and labor. Through regulations, the government is restricting a reasonable and economically efficient use of the owner's property. Such a partial taking and impairment of economic efficiency amounts to a regulatory taking for which compensation should be paid in accordance with the Fifth Amendment to the United States Constitution[2] and Section 13 of the Bill of Rights

---

1. § 2. Absolute and arbitrary power denied. Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.

2. Amendment V. No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment of indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the

to the Kentucky Constitution[3].

Property rights have crucially contributed to our freedom and prosperity. In *Vanhorne's Lessee v. Dorrance*, 28 F.Cas. 1012, 2 U.S. at 310 (1795), the United States Supreme Court noted that the "right of acquiring and possessing property, and having it protected, is one of the natural, inherent and inalienable rights of men .... The preservation of property then is a primary object of the social compact." In *Dorothy Lynch, et al v. Household Finance Corp., et al,* 405 U.S. 538, 552, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), the Supreme Court stated, "Property does not have rights. People have rights.... In fact, a fundamental interdependence exists between the personal right to liberty, and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized."

The actions of the Lexington–Fayette Urban County Government are comparable to those in centrally-planned economies where property tends to be managed by the state and government officials decide how to use those resources. The system of private property ownership works best when the individual holds the right to manage his property. When the law fails to respect private property rights there is little incentive to be productive and accumulate capital, grow economically, and create jobs.

Since the owner is free to start a new business or close an existing business, he should be able to determine—for good reasons, bad reasons, or no reason at all—whether to admit smokers, nonsmokers, or both. Customers or employees who object may go elsewhere. They would not be relinquishing any right that they ever possessed. By contrast, when a businessman is forced to effect an unwanted smoking policy on his own property, the government is taking part of his property by regulation.

C.S. Lewis warned of the loss of self-determination in *The Humanitarian Theory of Punishment:*

> Of all tyrannies a tyranny exercised for the good of its victims may be the most oppressive. It may be better to live under robber barons than under omnipotent moral busybodies. The robber baron's cruelty may sometimes sleep, his cupidity may at some point be satiated; but those who torment us for our own good will torment us without end for they do so with the approval of their own conscience.

---

same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**3.** § 13. Double jeopardy Property not to be taken for public use without compensation. No person shall, for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him.