RENDERED: JUNE 23, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0029-MR

FRATERNAL ORDER OF POLICE,
BLUEGRASS LODGE #4                                                    APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.            HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 21-CI-01972

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT; AMANDA
MAYS BLEDSOE; CHUCK
ELLINGER II; DAVID KLOIBER;
FRED BROWN; HANNAH LEGRIS;
JAMES BROWN; JENNIFER
REYNOLDS; JOSH MCCURN;
KATHY PLOMIN; LINDA GORTON;
LIZ SHEEHANN; PRESTON
WORLEY; RICHARD MOLONEY;
STEVE KAY; SUSAN LAMB; AND
WHITNEY BAXTER                                                         APPELLEES

OPINION
AFFIRMING, IN PART, REVERSING,
IN PART, AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND GOODWINE, JUDGES.

GOODWINE, JUDGE:  The Fraternal Order of Police, Bluegrass Lodge #4 (FOP) appeals the Fayette Circuit Court order dismissing its four-count amended complaint against Lexington-Fayette Urban County Government *et al.* (LFUCG) for failure to state a claim upon which relief can be granted under CR[1] 12.02.

FOP does not appeal the dismissal of the individual defendants the circuit court concluded enjoyed qualified immunity.  Therefore, we affirm the order to the extent that it dismisses FOP's claims against the individual defendants.

However, we conclude that FOP did state claims against LFUCG upon which relief can be granted.  We reverse the order dismissing those claims and remand for additional proceedings.

## BACKGROUND

On June 24, 2021, LFUCG enacted a "no-knock ordinance" banning the use of no-knock warrants[2] in Fayette County, requiring Lexington Police Department ("LPD") officers to knock and announce their presence before executing any search warrant on a private residence.  The ordinance was enacted

---

[1] Kentucky Rules of Civil Procedure.

[2] A no-knock warrant is a judicial process authorizing a police officer to enter premises without prior announcement of his presence or authority for reasons including officer and public safety. *See Richards v. Wisconsin*, 520 U.S. 385, 394-95, 117 S. Ct. 1416, 1421-22, 137 L. Ed. 2d 615 (1997).  No-knock warrant service makes possible "the avoidance of life-threatening resistance by occupants of the premises . . . ." *Hudson v. Michigan*, 547 U.S. 586, 596, 126 S. Ct. 2159, 2166, 165 L. Ed. 2d 56 (2006).

amid a national debate on the propriety of no-knock warrants, which arose after Breonna Taylor was fatally shot in her home by Louisville police officers executing a no-knock search warrant on March 13, 2020.[3]

Approximately one year later, the Kentucky General Assembly passed a bill limiting the use of no-knock warrants. *See* 2021 Ky. Acts ch. 202 (S.B. 4) (eff. Apr. 9, 2021). Among other things, Senate Bill 4 amends KRS[4] Chapter 455, implementing specific limitations on the issuance of no-knock warrants by Kentucky courts and the execution of said warrants. *See* KRS 455.180-455.200.

On May 4, 2021, LFUCG proposed the ordinance to ban no-knock warrants in Lexington. The purpose of the proposed ordinance was to protect "not only our residents in Lexington but also officers going forward." LFUCG's May 4, 2021, Planning and Public Safety Committee – Virtual Meeting at 1:17:35-1:18:28.

On May 13, 2021, the FOP emailed Mayor Linda Gorton demanding that LFUCG engage in collective bargaining with the FOP about whether enacting the ordinance affected LPD officers' working conditions. LFUCG responded that it was not obligated to bargain over the legislative decision of whether to enact the

---

[3] On June 11, 2020, Louisville Mayor Greg Fisher signed into law an ordinance known as "Breonna's Law," banning the use of no-knock warrants in Louisville. LOUISVILLE, KY, ORDINANCE NO. O-213-20 (2020).

[4] Kentucky Revised Statutes.

ordinance. Although LFUCG offered to meet and confer with the FOP to discuss the ordinance, the FOP declined. On June 24, 2021, LFUCG passed the Ordinance.[5] The following day the mayor signed it into law.

On June 30, 2021, before the Ordinance became effective, FOP pursued a different course, initiating the CBA's grievance procedure which says: "[a]ny controversy between L.F.U.C.G. and [FOP] concerning the meaning and application of any provisions of this Agreement shall be adjusted in the manner"

---

[5] As codified in the Code, the Ordinance provides:

**Sec. 23-51. - No-knock warrants**.

    (a) For purposes of this section, "no-knock warrant" means any arrest or search warrant issued by a judge and executed upon a premises that does not require those executing the warrant to knock and announce themselves and their purpose prior to executing the warrant.

    (b) No police officer of the Lexington-Fayette Urban County Government Division of Police shall seek or execute no-knock warrant [sic] at any location within Lexington-Fayette County.

    (c) Any Lexington police officer charged with execution of a warrant upon any premises in order to gain entry shall:

        (1) Physically knock on an entry door to the premises in a manner and duration reasonably expected to be heard by the occupants;

        (2) Clearly and verbally announce, in a manner reasonably expected to be heard by the occupants, as law enforcement having a warrant; and

        (3) Absent exigent circumstances, wait a reasonable amount of time after knocking and announcing before entering the premises.

    (d) All Lexington Police Officers present in the initial entry and securing of the scene of a warrant shall be equipped with and activate a body worn camera.

LFUCG ORD. NO. 056-2021, § 1 (6-24-21).

described in the CBA. (CBA, Art. 11, Sec. 1.) This provision is consistent with the Act, which says "urban-county governments . . . are prohibited from . . . [r]efusing to bargain collectively in good faith[,]" which includes the duty "to negotiate any question arising under any agreement[.]" KRS 67A.6904(1)(e), (3).

On the same day FOP initiated the grievance procedure, it also filed a complaint in Fayette Circuit Court seeking a declaratory judgment that LFUCG was obligated by the Act to bargain collectively with FOP both before unilaterally prohibiting FOP's members from utilizing no-knock warrants and after the decision reached fruition. FOP sought to have the circuit court declare the Ordinance violated the "home rule" statute, KRS 82.082, KY. CONST. § 156b, and KRS 67A.070. FOP also asked for injunctive relief while the collective bargaining process ran its course.

LFUCG responded that it had no duty to bargain the effects of the Ordinance on LPD Officers collectively. FOP responded, amending its complaint to allege LFUCG breached the CBAs both by its unilateral decision to ban no-knock warrants without collective bargaining and by refusing to participate in the CBA grievance procedure to resolve the "controversy . . . concerning the meaning and application" of the CBA's "other conditions of employment" provisions.

Notwithstanding these allegations of fact, the circuit court granted LFUCG's motion under CR 12.02 to dismiss FOP's complaint for failure to state any claim upon which relief can be granted. The FOP timely appealed.

On appeal, the FOP argues that in failing to engage in collective bargaining, LFUCG violated: (1) KRS 67A.6902(1) in enacting the Ordinance; (2) the same statute in failing to bargain over the effects of the Ordinance; (3) the CBA in enacting the Ordinance and ignoring the grievance; and (4) KRS 455.180 *et seq.* Additionally, the FOP argues it has standing because it suffered a concrete injury when LFUCG disregarded its statutory bargaining right.

**STANDARD OF REVIEW**

Whether a complaint states a claim upon which relief may be granted is a question of law. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010). Appellate review is "*de novo*, affording no deference to the trial court." *Id.* "[T]he pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true." *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009).

**ANALYSIS**

Relevant to deciding whether FOP's complaint states any claim upon which relief can be granted, certain averments of fact therein must be taken as true.

They say:

- "The No-Knock Ordinance seriously endangers the health and safety of LPD Officers." (Amended Complaint, ¶53.)

- "The No-Knock Ordinance prohibits LPD Officers from seeking a lawful no-knock warrant, even when they objectively establish probable cause that requiring law enforcement to knock and announce their presence would increase the danger to officers involved in executing the warrant." (*Id.* ¶54.)

- "The No-Knock Ordinance exposes LPD Officers to possible discipline for insubordination if they disregard a lawful warrant because of the 'knock and announce' policy." (*Id.* ¶62.)

- "[FOP] timely requested an arbitration panel from the Federal Mediation and Conciliation Service." (*Id.* ¶73.)

- "The parties dispute whether the No-Knock Ordinance implicates and affects conditions of employment and mandatory subjects of collective bargaining." (*Id.* ¶89.)

- "The Parties dispute whether they must engage in collective bargaining over the No-Knock Ordinance." (*Id.* ¶90.)

- "LPD Officers now suffer an immediate and irreparable loss of bargaining control over their health and safety." (*Id.* ¶118.)

- "LPD Officers now suffer an immediate and irreparable loss of bargaining control over their discipline system." (*Id.* ¶119.)

- "LPD Officers now face an enhanced risk of serious physical injury and death caused by the No-Knock Ordinance." (*Id.* ¶120.)

The order dismissing does not begin by examining the sufficiency of the allegations and whether they state a claim. Instead, it starts by focusing on LFUCG's "home rule" powers and its authority to enact local legislation on

-7-

matters of public policy. Despite FOP's allegations and argument to the contrary,[6] the court presumed "[t]he soundness of the Ordinance as a matter of public policy is not at issue." (R. 454.)

The circuit court's touchstone of local government's power to enact ordinances it declares as public policy or as being in pursuit of a public purpose, coupled with a legal conclusion LFUCG was freed thereby from contractual and statutory duties, is reflected early in its order when it finds FOP lacks "standing to challenge the constitutional validity of the No-Knock Ordinance." (R. 453, footnote 2.) This ruling appears intended to apply to all four counts. We will address standing as to each count.

### A.  Count 1:  FOP's breach-of-contract claim

We hold that FOP has statutory standing to pursue its breach of contract claim. KRS 67A.6908(3) ("Suits for violation of agreements between an urban-county government and a labor organization representing police officers . . .

---

[6] FOP challenged LFUCG's assertion in its motion to dismiss that "'elected officials cannot be required to bargain' policy decisions." FOP argued that such a "position radically undercuts KRS Chapter 67A" and empowers municipal governments to "subvert the CBAs" simply by using an ordinance to make unilateral changes to public employees' working conditions. (Response by Plaintiff [to] Renewed Motion to Dismiss, pp. 14-15.) FOP repeats the argument before this Court. (Appellant's brief, p. 5.)

may be brought by the parties to the agreement in the Circuit Court of the urban-county government.").[7]

The FOP alleges the CBAs created LFUCG's duty to bargain collectively, and it also alleges LFUCG breached that duty. The injury, as the circuit court said, is that FOP "was denied the ability to bargain[.]" (R. 453, footnote 2.) Of course, whether there was a breach remains, even now, an unresolved question of fact for a jury, assuming the answer cannot be resolved by motion practice under CR 56 or otherwise. *A.A. By & Through Lewis v. Shutts*, 516 S.W.3d 343, 349 (Ky. App. 2017) ("breach question is generally a fact issue for a jury").

The order dismissing does not indicate that FOP's Count 1 fails to allege all elements of a contract breach claim. We, too, conclude that Count 1 alleges facts which, if proven, justify relief.

However, the circuit court dismissed Count 1 for different reasons than FOP's failure to state a claim. Passing over the discussion of the allegations of duty and breach, the circuit court said, "LFUCG did not violate Article 1 of the CBA by enacting the No-Knock Ordinance." (R. 460.) The circuit court found that LFUCG did not commit a breach – generally a question of fact for the jury.

---

[7] Although Kentucky provides for an administrative process to cure a government's failure to bargain, KRS 67A.6906, the General Assembly carved out this unique direct route to the court system, KRS 67A.6908(3).

Because the claim was dismissed on the pleadings, the circuit court's ruling of no breach cannot be based on factfinding; it must be based on the circuit court's legal conclusions. FOP's arguments challenge the circuit court's conclusions. We do not reach the merits of the circuit court's conclusions given that we are reversing and remanding to allow the parties to flesh out the merits of the arguments and, after doing so, allow the circuit court to rule accordingly. The parties must have ample opportunity to explore discovery if desired and then present their arguments to the circuit on what constitutes conditions of employment, effects of employment, "home rule," administrative versus legislative action, whether the Ordinance disturbs a comprehensive scheme of legislation, and whether injunctive relief is warranted.

B. **Count 2: FOP's Declaration of Rights under KRS 67A.6901 *et seq.***

The circuit court did not expressly rule that FOP failed to state a claim for a declaration of its rights under KRS 67A.6901 *et seq.* However, the order says it "addresses all claims of all parties," and that language subsumes Count 2. (R. 462.) We conclude that FOP's Count 2 did not fail to state a claim upon which relief can be granted. Therefore, we reverse the order dismissing Count 2.

Count 2 is the vehicle, and KRS Chapter 418 is the authority by which FOP "appl[ies] for and [seeks to] secure a declaration of [its] right" under the Act legislating collective bargaining. KRS 418.040 ("In any action in a court of record

-10-

of this Commonwealth having general jurisdiction . . . the plaintiff may ask for a declaration of rights . . . and the court may make a binding declaration of rights . . . ."). FOP sought from the circuit court the relief the General Assembly expressly authorized the circuit court to grant, as stated in KRS 418.055 and KRS 418.070. (Amended Complaint, ¶¶ 96, 97.)

To the extent the circuit court's ruling that FOP lacks standing applies to Count 2, we reverse that ruling. FOP has statutory standing to bring the claims stated in Count 2, and as just summarized.

We agree with FOP that, absent proof of its clear and convincing waiver of the right to collectively bargain with LFUCG over this subject, LFUCG's argument will not justify dismissing either Count 1 or Count 2. And at this stage of the litigation, proof sufficient to satisfy the standard for a waiver stated in *Greathouse v. Shreve*, 891 S.W.2d 387, 391 (Ky. 1995), is not a part of the circuit court's analysis.

LFUCG argues FOP's waiver of rights in two other places. First is the implication that waiver can be found in FOP's refusal of LFUCG's invitation to "meet and confer." LFUCG's invitation was meaningless because it was accompanied by LFUCG's express denial of its obligation to bargain collectively.

Second, LFUCG cites *KenAmerican Resources, Inc. v. Potter Grandchildren, LLC*, for the idea that "filing this action in the Fayette Circuit

Court was a clear and irrefutable renouncement of the arbitration provision." 916 F. Supp. 2d 799, 801 (E.D. Ky. 2013) (quoted in Appellees' brief, p. 22). This case is distinguishable by its facts and the law.

> The burden of proof is upon the person relying upon waiver. Waiver requires proof of a "knowing and voluntary surrender or relinquishment of a known right." Because this is a right with both constitutional and statutory underpinnings, proof of waiver must be clear and convincing. As such, while no formal or written waiver is required, statements and supporting circumstances must be equivalent to an express waiver to meet the burden of proof. *Greathouse v. Shreve*, Ky., 891 S.W.2d 387, 391 (1995).

*Pangallo v. Kentucky Law Enf't Council*, 106 S.W.3d 474, 479 (Ky. App. 2003). We examined these pleadings carefully, including the CBAs incorporated in the complaint and amended complaint. There is nothing that supports LFUCG's claim of waiver.

A close reading of the order dismissing reveals it does not dismiss Count 2 for failing to state a claim. It could be interpreted as the circuit court having adjudicated the claim in favor of LFUCG.

On its face, Count 2 states a claim upon which relief can be granted. When reviewing denials of claims for declaratory judgment, "[t]he appellate court in its consideration of the case, shall not be confined to errors alleged or apparent in the record. When, in its opinion, further pleadings or proof is necessary to a final and correct decision of the matters involved, or that should be involved, it

shall remand the case for that purpose . . . ." KRS 418.065. Because the

Declaratory Judgment Act is "to be liberally interpreted and administered[,]" KRS

418.080, we believe it appropriate to follow the mandate of KRS 418.065.

Therefore, we reverse the dismissal of Count 2 and remand for further proceedings.

C.    **Count 3:  FOP's Declaration of Rights under KY. CONST. § 156b, KRS 82.082, and KRS 67A.070**.

The circuit court dismissed this claim by granting LFUCG's motion

under CR 12.02(f) for failing to state a claim upon which relief can be granted.

Count 3 alleges FOP's right to challenge the Ordinance as void under the law of

"home rule." We conclude that the allegations do state a claim upon which relief

can be granted. However, as with Count 2, it is this Court's opinion that "further

pleadings or proof is necessary to a final and correct decision of the matters

involved, or that should be involved," and we "shall remand the case for that

purpose" with the following observation. KRS 418.065.

Under "home rule," LFUCG is empowered to "enact and enforce

within their territorial limits such tax, licensing, police, sanitary and other

ordinances not in conflict with the Constitution and general statutes . . . ." KRS

67A.070(1). However, "ordinances shall be deemed to conflict with general

statutes of this state . . . (a) [w]hen the ordinance authorizes that which is expressly

prohibited by a general statute; or (b) [w]hen there is a comprehensive scheme of

legislation on the same subject embodied in a general statute." KRS 67A.070(2).

-13-

FOP is not arguing for reversal of the circuit court's dismissal of Count 3 because Senate Bill 4 expressly prohibits the Ordinance. Rather, FOP argues that the Ordinance disturbs a comprehensive scheme of legislation.

FOP claims Kentucky laws, including Senate Bill 4, "left no room for local regulation[,]" (Appellant's brief, p. 25), and argues the "General Assembly has enacted a broad and detailed scheme regulating[,]" in this case, no-knock warrants. *Whitehead v. Est. of Bravard*, 719 S.W.2d 720, 722 (Ky. 1986).

Senate Bill 4 does not "merely amend[] KRS 455, which concerns 'miscellaneous criminal practice provisions.'" (R. 456.) It is more comprehensive. Senate Bill 4 also amended KRS 523.020 (relating to perjury in procuring a warrant not requiring notice) and created a new rule of evidence, KRE[8] 410A, making inadmissible the fruits of a search under a warrant that does not comply with KRS 455.180.

Furthermore, in addition to Senate Bill 4, KRS 95.019(1) says, "all members of the police force in urban-county governments . . . shall possess all of the common law and statutory powers of constables and sheriffs." KRS 95.019(1). The General Assembly did not abolish the power of all Kentucky sheriffs to utilize no-knock warrants, and LFUCG lacks the authority to do so. This seems to create

---

[8] Kentucky Rules of Evidence.

a conflict between the Ordinance and KRS 95.019 that may affect the analysis of "home rule" as the authority for the Ordinance.

Granted, "[t]he simple fact that the state has made certain regulations does not prohibit local government from establishing additional requirements so long as there is no conflict between them." *Lexington Fayette Cnty. Food & Beverage Ass'n v. Lexington-Fayette Urban Cnty. Gov't*, 131 S.W.3d 745, 750 (Ky. 2004). LFUCG argues it has concurrent authority under "home rule" to enact the Ordinance. FOP cites *Lexington Fayette County Food & Beverage* for the proposition that "[t]he true test of the concurrent authority of the state and local government to regulate a particular area is the absence of conflict." *Id.*

We have carefully considered LFUCG's argument that the laws can be harmonized and see a glaring flaw in its presentation. LFUCG argues Senate Bill 4 does not "establish a comprehensive system of state regulation that excludes any local regulation [because] '[w]hen the legislature seeks to expressly preempt entire fields of local regulation and ordinance, it does so by clear and unmistakable language.'" (Appellees' brief, p. 25 (quoting *Lexington Fayette Cnty. Food & Beverage Ass'n*, 131 S.W.3d at 752).) This inappropriately blends the measure of conflicting legislative schemes set out in KRS 67A.070(2)(a) and (b). In plainer terms, LFUCG is saying *implied* preemption by a conflicting comprehensive scheme of state law under KRS 67A.070(2)(b) requires the same *express*

-15-

prohibition as required by KRS 67A.070(2)(a) for preemption to be found. If that were true, implied preemption would not exist but be swallowed up by a rule recognizing only express prohibitions against local legislation.

Again, the circuit court appears to have adjudicated the merits of FOP's Count 3. (R. 455-56.) For this and the other reasons stated, we must reverse the dismissal of Count 3 and remand for further consideration.

**D.** **Count 4: FOP's claim for injunctive relief.**

The circuit court failed to rule on the merits of FOP's Count 4, a claim for injunctive relief. This is understandable, given the court's dismissal of Counts 1 through 3. Because we are reinstating those claims, we are remanding FOP's claim in Count 4 for further consideration.

## CONCLUSION

For the reasons stated, we affirm, in part, and reverse, in part, and remand, the Fayette Circuit Court's December 8, 2021 Order dismissing the Amended Complaint for failure to state claims upon which relief can be granted.

ALL CONCUR.

-16-

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Scott A. Crosbie
Nicholas A. Oleson
Lexington, Kentucky

BRIEF FOR APPELLEES:

Jason P Renzelmann
Jennifer L. Bame
Louisville, Kentucky

Alexander L Ewing
West Chester, Ohio

Keith Horn
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Jason P Renzelmann
Jennifer L. Bame
Louisville, Kentucky