RENDERED: MAY 29, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0433-MR

PUPPYGRAM COM LLC                                APPELLANT

            APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE TRACY E. DAVIS, JUDGE
            ACTION NO. 24-CI-007213

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT AND
OFFICE OF CODES AND
REGULATIONS                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

COMBS, JUDGE: Puppygram Com LLC (Puppygram), a foreign limited liability company, appeals an order of the Jefferson Circuit Court dismissing its complaint against Louisville/Jefferson County Metro Government (Louisville Metro) and Office of Codes and Regulations (a division of Louisville Metro Inspections, Permits, and Licenses). In its complaint, Puppygram challenged enforcement of an

amendment to a local ordinance governing the operation of pet stores. The amendment at issue prohibits the retail sale of dogs and cats therein. Puppygram argues that the circuit court erred by concluding that it failed to state a claim for which relief can be granted and by dismissing its request for a declaration of rights and an injunction prohibiting enforcement of the ordinance. After our review, we affirm.

The disputed provision -- an amendment to Louisville Metro Code of Ordinances, Section 91.141 -- was approved on October 3, 2023, and took effect one year later. Generally, the ordinance provides minimum standards for the care and keeping of animals at kennels and catteries or offered for sale in retail pet stores. As amended, it contains a straightforward prohibition: "It shall be unlawful for a retail pet store . . . to sell or offer for sale a dog or cat." A "retail pet store" is a "commercial establishment that sells or offers for sale animals on its premises at retail" notwithstanding what type of license (if any) the establishment holds. Puppygram does not dispute that it breeds and purchases puppies for resale and that it operates a "retail pet store" focused on the retail sale of dogs.

The ordinance contains a broader prohibition as well: "It shall be unlawful for any person to offer for sale any dog or cat at or on any street, public right-of-way, parkway, median, park, recreation area, outdoor market, booth, flea markets, roadside stand, temporary site or parking lot . . . ." The amendment does

**not** prohibit transactions between consumers and animal rescues, shelters, or breeders who sell dogs and cats directly to purchasers.

On October 8, 2024, Puppygram initiated this action challenging the ban on the retail sale of dogs and cats in pet stores. Construing the language of its complaint broadly, we observe that Puppygram alleged that the amendment is unconstitutional under the Kentucky Constitution; violates the Due Process Clause, the Equal Protection Clause, and the Commerce Clause of the United States Constitution; exceeds the authority of the urban-county government, in part, because it "designates no public purpose or public benefit;" is preempted by the federal Animal Welfare Act (AWA), 7 U.S.C.[1] § 2131, *et seq.*; and creates an unlawful monopoly. It also alleged that the sale of dogs at its pet store constitutes a non-conforming use pursuant to the land development code and that, consequently, it must be "grandfathered in."

Without answering the complaint, Louisville Metro filed a motion to dismiss the complaint for failure to state a claim. *See* Kentucky Rules of Civil Procedure (CR) 12.02(f). The circuit court granted the motion and dismissed Puppygram's complaint in its entirety. This appeal followed.

A motion to dismiss for failure to state a claim tests whether the complaint states a plausible claim for relief. The motion presents to the court a

---

[1] United States Code.

pure question of law. *Tucker v. Tucker*, 623 S.W.3d 142, 145 (Ky. App. 2021). As a result, we do not defer to the circuit court. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010). Instead, we review its decision *de novo*. *Id*. *See also Blue Movies, Inc. v. Louisville/Jefferson Cnty. Metro Government*, 317 S.W.3d 23, 28 (Ky. 2010).

Some of Puppygram's initial arguments have been abandoned on appeal. As a matter of course, we address only those issues presented in its brief.

We begin with Puppygram's contention that the circuit court erred by dismissing its allegation that a ban on the retail sale of dogs in pet stores exceeds the authority of Louisville Metro to act pursuant to its police powers. It argues that applying the ban to limit consumers' access to dogs and puppies by allowing adoption or purchase through animal rescues, shelters, and designated breeders, illegally impinges upon its retail sales business because it is not a "puppy mill."

Through the exercise of the police power, municipal corporations have historically enjoyed wide latitude to adopt ordinances that promote the health, safety, morals, or general welfare of the people. *See Lexington Fayette Cnty. Food and Beverage Ass'n v. Lexington-Fayette Urban Cnty. Government*, 131 S.W.3d 745, 749 (Ky. 2004) (citing *U.S. Mining & Exploration Natural Resources Co., Inc. v. City of Beattyville*, 548 S.W.2d 833 (1977)). "Among the police powers of government, the authority to promote and safeguard public health is a high priority." *Commonwealth v. Mountain Comprehensive Care Center, Inc.*, Nos.

2025-CA-0122-MR, 2025-CA-0166-MR, 2026 WL 1261486, at *7 (Ky. App. May 8, 2026) (citing *Lexington Fayette Cnty. Food & Beverage Ass'n*, 131 S.W.3d at 749). Furthermore, provisions of the Kentucky Revised Statutes (KRS) specifically authorize Louisville Metro to enact and enforce ordinances that it deems necessary for the health, education, safety, welfare, and convenience of its inhabitants and for the effective administration of government. KRS 67A.070.

Sufficient grounds exist for the enactment of a provision if it has a "substantial relation to a legitimate object in the suppression of the conditions which the city authorities deem detrimental to the public good." *Shaeffler v. City of Park Hills, Kentucky*, 279 S.W.2d 21, 22 (Ky. 1955). The fact that an exercise of police power impinges upon private interests does not restrict reasonable regulation. *Lexington Fayette Cnty. Food and Beverage Ass'n.*, 131 S.W.3d at 752.

Before enacting the ban, the urban-county council considered information indicating that pet store puppies have the capacity to spread antibiotic-resistant infections to humans; that consumer issues surrounding the retail sale of cats and dogs at pet stores abound; and that the retail sale of cats and dogs at pet stores drives production at "puppy mills" and "kitten factories." An expressly stated purpose of the amendment is to address the established health risks to consumers posed by pet store puppies. Moreover, by prohibiting the retail sale of

cats and dogs at pet stores (and outdoor venues), the amendment aims to curb the prevalence of large-scale commercial breeding operations; to decrease the burden that the overpopulation of dogs and cats imposes upon local agencies; and to promote community awareness of animal welfare. These concerns directly and logically justify an exercise of the police power.

Louisville Metro acted well within its authority to consider the nature of a broadly-based social problem and to choose -- among a variety of means -- to address it. Its decision was not arbitrary; instead, it was practical and rational under the circumstances. Given its express purposes, the amendment is a reasonable regulation upon the retail sale of cats and dogs. Whether it might have chosen a less restrictive mechanism to address the problem presents a political question best answered at the ballot box and is, therefore, irrelevant to our review. *See City of Louisville v. Thompson*, 339 S.W.2d 869, 872 (Ky. 1960) (citing *Berman v. Parker*, 348 U.S. 26, 75 S. Ct. 98, 102, 99 L. Ed. 27 (1954)) ("[Where reasonable minds may differ] the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation[.]"). Whether Puppygram, itself, can be deemed a "puppy mill" (which Puppygram vehemently denies) is also irrelevant to the analysis.

Next, we consider Puppygram's contention that the challenged amendment violates the Commerce Clause of the United States Constitution. U.S.

CONST., Art. I, § 8, cl. 3.  While the Commerce Clause specifically refers to the authority of Congress, the Supreme Court of the United States has recognized that it also limits the power of states to erect barriers against interstate trade.  *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35, 100 S. Ct. 2009, 2015, 64 L. Ed. 2d 702 (1980).  Moreover, dormant Commerce Clause jurisprudence holds that states may not impose regulations that place an undue burden on interstate commerce -- even where those regulations do not discriminate between or among in-state and out-of-state businesses.  *See Brown–Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 579, 106 S. Ct. 2080, 2084, 90 L. Ed. 2d 552 (1986) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 847, 25 L. Ed. 2d 174 (1970)).

Puppygram asserts that the ban on the retail sale of dogs in local pet stores is unconstitutional because any laws that discriminate against interstate commerce are invalid and that the ban violates the dormant Commerce Clause because it "excessively burdens the interstate commerce."  We disagree.

Louisville Metro's ban on the retail sale of cats and dogs through local pet stores does not address dogs and cats bred in other states or localities.  The amendment even-handedly prohibits the retail sale of all dogs and cats at all local pet stores without regard for foreign economic interests.  The ban is not designed to favor the retail sale of locally-bred dogs and cats over those bred elsewhere.

Instead, the purpose and effect of the amendment is to stem the over-breeding of dogs and cats and to protect the community from the harm that results -- regardless of where the breeding occurs.

Puppygram contends that the ban will economically disadvantage out-of-state breeders. However, the ban does not prohibit the importation of dogs into the area nor does it place added costs upon the business of selling dogs bred out-of-state; thus, it only incidentally affects interstate commerce. The ban is not unduly burdensome.

Finally, although the ban adversely impacts local pet stores that offer dogs and cats for retail sale, this economic effect alone is insufficient to state a claim under the Commerce Clause. Moreover, we tend to agree with Puppygram's observation that "intent here is to push consumers to adopt from local shelters as opposed to purchasing pure-bred dogs." However, the simple fact that the prohibition impacts Puppygram's own business model does not mean that it runs afoul of the dormant Commerce Clause. The circuit court did not err by dismissing this count of the complaint because it fails to state a plausible claim for relief.

Next, we consider Puppygram's contention that the ban on retail sales of dogs through pet stores violates the Equal Protection Clause of the Fourteenth Amendment. U.S. CONST. Amend. XIV, § 1. That argument is premised on

Puppygram's claim that "[t]here is no rational basis between closure of Puppygram and the eradication of puppy mills."

Without engaging in a comprehensive analysis of the nuances of the Equal Protection Clause, we can say unequivocally that Puppygram's underlying premise is fatally flawed for a number of reasons. It is so, primarily, because rational basis review requires Puppygram to show that there is no plausible basis for the ban on the retail sale of dogs and cats through local pet stores. *Mountain Comprehensive Care Center, Inc.*, 2026 WL 1261486, at \*8; *Vision Mining, Inc. v. Gardner*, 364 S.W.3d 455, 465 (Ky. 2011).

However, as discussed above, the decision to prohibit the retail sale of dogs and cats at local pet stores was undertaken for legitimate reasons. Discriminating between the retail sale of dogs and cats through pet stores (and outdoor venues) and transactions involving animal rescues, shelters, and breeders who sell directly to consumers is aimed at protecting the public's health and welfare and curbing mass-breeding operations with their predictably disastrous consequences -- including higher rates of abandonment and mistreatment. Louisville Metro rationally determined that prohibiting the retail sale of dogs and cats through pet stores (and outdoor venues) will help reduce the demand for animals produced at puppy mills and kitten factories and can be expected to help reduce animal overpopulation and to protect consumers' welfare.

Rational basis review does not require legislation to operate with precision or to produce congruently equitable results in every application. *See Mountain Comprehensive Care Center, Inc.*, 2026 WL 1261486 at *10. The distinction drawn between retail pet stores and other outlets is rationally related to and promotes a legitimate governmental interest. Because amendment of the ordinance survives rational basis review, Puppygram has failed to show a violation of the Equal Protection Clause. The circuit court did not err by dismissing this claim.

Next, we consider Puppygram's argument that the ban creates an unlawful monopoly in favor of animal rescues and shelters. Puppygram cites to the provisions of KRS 367.175(2) that make it unlawful for anyone to monopolize or to conspire with any other person to monopolize commerce in the Commonwealth. Violation of this provision constitutues a Class C felony. KRS 367.175(3).

However, Puppygram overlooks specific provisions of KRS 367.176. The statute provides that KRS 367.175 shall not be construed to render illegal activities which are legitimate under the laws of the Commonwealth or the United States. KRS 367.176(1). Additionally, KRS 367.176(2) provides that "KRS 367.175 shall not apply to activities authorized or approved under any federal or state statute or regulation." As discussed, enactment of the ban was lawful.

Consequently, the provisions of KRS 367.175 are inapplicable. The circuit court did not err by dismissing this count of the complaint.

Next, we consider Puppygram's contention that its retail sale of dogs must be considered a nonconforming use of its property authorized by Louisville Metro's land development code. Puppygram explains that the amendment prohibiting the retail sale of dogs in pet stores must be invalildated because it "violates the grandfather clause" of the code. In support of its argument, Puppygram cites to the provisions of KRS 100.253.

KRS 100.253(1) provides, in part, that the lawful use of a building or premises "existing at the time of the adoption of any zoning regulations affecting it, may be continued, although such use does not conform to the provisions of such regulations." This provision directs that the use of one's property may (under certain circumstances) be permitted despite the fact that the use conflicts with *a newly enacted zoning regulation.* However, by its very terms, this provision is inapplicable to Louisville Metro's decision to amend its Code of Ordinances. Consequently, the circuit court did not err by dismissing this count of the complaint.

Next, we consider Puppygram's contention that the ban constitutes an unlawful impairment of contract. Puppygram argues that the amendment violates the Contract Clauses of both the United States Constitution, U.S. CONST., Art. I, §

-11-

10, cl. 1., and of the Kentucky Constitution, KY. CONST. § 19, because it limits its ability to honor the terms of its lease agreement.

While the terms of Puppygram's lease agreement restrict use of the premises to the "sale of dogs and cats and dog and cat supplies . . . without the prior written consent of [the landlord]," the amendment has not substantially impacted the parties' obligations to each other. Regardless, even if Puppygram could show that the ban substantially impaired the contract, Kentucky has long recognized that an exercise of the police power, based on "the general welfare of the community," may validly infringe on the right to contract. *Zuckerman v. Bevin*, 565 S.W.3d 580, 598–99 (Ky. 2018) (citing *City of Covington v. Sanitation Dist. No. 1*, 301 S.W.2d 885, 888 (Ky. 1957)) (reference to existing laws in a contract, at the time it is made, carries with it also the general principle that those relationships defined by the contract are subject to change by subsequent legislation under a reasonable exercise of the state's police power.)

The same analysis applies to the federal provision. Where legislation constitutes a substantial impairment of contract, it must be justified by a significant and legitimate public purpose -- such as addressing a broad social or economic problem. *Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411–12, 103 S. Ct. 697, 704–05, 74 L. Ed. 2d 569 (1983).

In light of Louisville Metro's legitimate interest in furthering the humane treatment of animals, curbing animal overpopulation, and protecting consumers, the amendment does not violate either the federal or state Contract Clause. Because Plaintiff's claims on this issue fail, the circuit court did not err by dismissing this count of the complaint.

Next, we consider Puppygram's contention that the ban violates its right against a governmental taking of private property without just compensation. Because its lease agreement restricts use of the premises to the sale of dogs and cats, Puppygram argues that Louisville Metro's prohibition of retail sales of dogs and cats through pet stores constitutes a "regulatory taking" (a restriction on the use of property that goes "too far." *Horne v. Department of Agriculture*, 576 U.S. 350, 360, 135 S. Ct. 2419, 2427, 192 L. Ed. 2d 388 (2015)). This argument, too, is fatally flawed.

Government regulation often "curtails some potential for the use or economic exploitation of private property." *Andrus v. Allard*, 444 U.S. 51, 65, 100 S. Ct. 318, 326–28, 62 L. Ed. 2d 210 (1979). Nevertheless, the Fifth Amendment's Takings Clause ("nor shall private property be taken for public use, without just compensation") is not always implicated. U.S. CONST. Amend. V. (The Takings Clause is made applicable to the states through the provisions of the Fourteenth Amendment). In fact, the limitations on government regulation derived from the

Takings Clause coexist with the municipality's police power. *Sheetz v. Cnty. of El Dorado, California*, 601 U.S. 267, 273–74, 144 S. Ct. 893, 899, 218 L. Ed. 2d 224 (2024). It is only where legislation fails to advance a legitimate state interest or denies an owner economically viable use of his property interest that the Takings Clause is implicated. *Id.*

In this case, despite the ban on its retail sale of dogs, it is clear that Puppygram is able to derive economic benefit from its lease agreement. It is able to continue selling dog and cat supplies, and with the landlord's permission, can sell other pets to consumers. Regulations that bar trade in certain goods are routinely upheld against claims of unconstitutional taking; and an interest in anticipated gains has traditionally been viewed as less compelling than other property-related interests. *See Allard*, 444 U.S. at 66, 100 S. Ct. at 327. A decrease in the value of its lease agreement due to a permissible restriction imposed upon what can be sold in the pet store does not equate with a constitutional taking. The circuit court did not err by dismissing this count of the complaint.

Finally, we address Puppygram's argument that the ban is overbroad, arbitrary, capricious, and an abuse of discretion. It contends that the ban violates principles of substantive due process because it is not rationally related to a legitimate government purpose.

We agree that some legislation may indeed be so arbitrary or irrational as to violate substantive due process requirements. However, the challenged amendment at issue here is subject only to rational basis scrutiny. *Beshear v. Acree*, 615 S.W.3d 780, 816 (Ky. 2020). Pursuant to this standard, the legislation need only be rationally related to a legitimate government objective. *Id.* (citing *Stephens v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 624, 627 (Ky. 1995)).

Louisville Metro's ban on the retail sale of cats and dogs in pet stores appears reasonably aimed at accomplishing legitimate objectives when analyzed pursuant to rational basis scrutiny. Consequently, the circuit court did not err by dismissing this count of the complaint.

The order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:

Nader George Shunnarah
Louisville, Kentucky

BRIEF FOR APPELLEE:

Michael J. O'Connell
Jefferson County Attorney
Louisville, Kentucky

Robbie J. Howard
Assistant Jefferson County Attorney
Louisville, Kentucky